IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| ANTONYO HARRIS, | ) | |
| | ) | |
| Plaintiff | ) | 1:24-CV-00347-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| | ) | |
| SUPERINTENDENT PATRICIA | ) | |
| THOMPSON, | ) | MEMORANDUM OPINION ON |
| | ) | DEFENDANT'S MOTION TO DISMISS |
| Defendant | ) | OR IN THE ALTERNATIVE FOR |
| | ) | SUMMARY JUDGMENT |
| | ) | |
| | ) | ECF NO. 28 |
| | ) | |

Defendant Patricia Thompson has moved to dismiss Plaintiff Antonyo Harris's
Amended Complaint under Fed. R. Civ. P. 12(b)(6) and, alternatively, for summary
judgment under Fed. R. Civ. P. 56. ECF No. 28. For the following reasons,
Thompson's motion for summary judgment will be denied, but her motion to dismiss
will be granted.[1]

I.    Material Facts[2]

Plaintiff Antonyo[3] Harris ("Harris") is an inmate in the custody of the
Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636.

[2] For purposes of Thompson's motion to dismiss, the factual allegations of Harris's Amended Complaint (ECF No. 18) are accepted as true. Regarding Thompson's motion for summary judgment raising the affirmative defense of failure to exhaust administrative remedies, the material facts are taken from the parties' respective Concise Statements of Material Fact and supporting exhibits. *See* ECF Nos. 30, 49, 51.

[3] The Department of Corrections spells the Plaintiff's first name as "Antonio." The Court will use the spelling used by Plaintiff and as listed on the Court's docket.

1

at Albion ("SCI-Albion"). *See* ECF No. 18. On September 24, 2024, a certified emergency response team conducted a search of the "front dorm" area of the prison block where Harris was housed. *Id.* p. 4, ¶ 1. During the search, officers informed Harris that contraband had been found inside a religious text belonging to Harris. *Id.*, p. 5, ¶ 4. Harris was then confined to the restrictive housing unit. *Id.* ¶ 3. While there, another inmate confessed to possessing the contraband and to owning the religious text. *Id.* Harris informed SCI-Albion Superintendent Patricia Thompson ("Thompson") of his innocence. Despite this information, Harris remained in restrictive custody.

Then, on November 26, 2024, Harris was subjected to a urine test. *Id.*, p. 3, ¶ 4. The test results were positive for "synthetic cannabinoids." *Id.* As a result, several restrictions were imposed on Harris including a loss of contact visits, video visits, confinement in the restrictive housing unit, and job loss. *Id.*, ¶ 5. Harris asserts that the positive test results were false. *Id.* ¶ 4. Harris complained to Thompson via a "request slip" about the "false positive" test results and asked to be re-tested. *Id.*, ¶ 7. Thompson informed Harris that re-testing was only conducted in response to a subpoena or court order. *Id.*

On January 9, 2025, Harris was issued a misconduct for possession of contraband. *Id.*, p. 6, ¶ 2. A hearing on the misconduct charge was conducted, and Harris was found not guilty. *Id.* ¶ 9. "[T]he defendants have restored all previous sanctions, with the exception of financial compensation." *Id.*, p. 3, ¶ 8.

## II.    Procedural History

Harris commenced this action on December 27, 2024.  ECF No. 1.  His original Complaint was docketed on January 31, 2025.  ECF No.7.  His Amended Complaint, which is his operative pleading, was filed on February 24, 2025.  ECF No. 18.  That pleading identifies Thompson as the sole defendant and alleges that she, as prison Superintendent, had "full oversight over the plaintiff, which includes but is not limited to ... the laboratory which handles urine tests." *Id.*, ¶ 6.  Harris' Amended Complaint asserts that Thompson's failure to prevent or correct the erroneous misconduct violated his rights under the Fourteenth and Eighth Amendments to the U.S. Constitution. *Id.*, ¶¶ 6, 9.[4]

## III.    Thompson's Motion

Thompson's motion challenges the legal sufficiency of Harris' Amended Complaint pursuant to Fed R. Civ. P. 12(b)(6) on multiple grounds. *See* ECF Nos. 28, 29. Thompson argues that (1) the Amended Complaint fails to allege facts to support her personal involvement in any violation of Harris's constitutional rights; (2) the Amended Complaint fails to allege facts to support a Fourteenth Amendment due process or equal protection claim; and (3) Harris's claims for money damages against her in her official capacity are barred by the Eleventh Amendment.

Thompson's alternative request for summary judgment pursuant to Fed. R. Civ. P. 56 is based on the affirmative defense that Harris failed to exhaust his administrative remedies before commencing this action.  In support of this defense,

---

[4] Harris has withdrawn his Fourth Amendment claim. *See* ECF No. 48, p. 1, ¶ 3.

Thompson filed a Concise Statement of Material Facts ("Concise Statement") [ECF 30] and supporting exhibits, including the declaration of Michael Bell, a grievance officer in the Secretary of Correction's Office of Inmate Grievances and Appeals ("SOIGA"). *See* ECF No. 30-1. Harris filed a response and a brief in opposition to the motion (ECF Nos. 48, 49) and, belatedly, a responsive Concise Statement [ECF No. 51] and supporting exhibits [ECF Nos. 51-1, 51-2, 51-3, 51-4, 51-5, 51-6, 51-7]. Harris's exhibits included the misconduct report at issue, a disciplinary hearing report, a misconduct hearing appeal form, a program committee review, his appeal to the superintendent from his misconduct proceedings, Thompson's response to his appeal, his appeal to final review, the final review response, and his initial "request to staff member" form. *See id.*; *see also* ECF No. 49-1, pp. 1-9.

Because exhaustion is "a non-jurisdictional prerequisite to an inmate bringing suit[,] ... it constitutes a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013)) (internal quotations omitted)). This means that the Court should address issues of exhaustion before reaching the merits of the plaintiff's claim. *See id.* Accordingly, the Court will first address Thompson's motion for summary judgment before considering her motion challenging the merits of Harris's claims.

IV.      Summary Judgment: Standard of Review

Rule 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party

must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

V.    Summary Judgment: Discussion

A. The Prison Litigation Reform Act's Exhaustion Requirement

Thompson argues that she is entitled to judgment as a matter of law because Harris failed to exhaust his administrative remedies before filing this action. The Prison Litigation Reform Act ("PLRA") requires incarcerated individuals to exhaust any prison administrative remedies available to them before commencing a lawsuit challenging the conditions of their confinement. *See* 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). The statute also requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must be plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

B. DC-ADM 801, the inmate discipline policy—not DC-ADM 804, the general grievance procedure—is the relevant administrative remedy, and Thompson has failed to demonstrate that Harris failed to exhaust that remedy.

Depending on the subject of the complaint or concern, a Pennsylvania prisoner must follow and complete one of three distinct DOC policies to exhaust his

administrative remedies: (i) the Inmate Discipline Policy, DC-ADM 801, which provides inmates an avenue to seek review of misconducts; (ii) the Administrative Custody Policy, DC-ADM 802, which provides inmates an avenue to seek review of placement in administrative custody; and (iii) the Inmate Grievance System Policy, DC-ADM 804, which provides inmates an avenue to seek review of issues involving prison conditions. *See Washington-El v. Beard*, 2013 WL 1314528, at *4 (W.D. Pa. Feb. 26, 2013) (explaining the scope and application of each administrative remedy), *report and recommendation adopted*, 2013 WL 1314521 (W.D. Pa. Mar. 28, 2013), *aff'd*, 562 Fed. Appx. 61 (3d Cir. 2014) (3d Cir. 2014). As this court has observed:

> These three policies are designed to address specific issues which may arise in connection with an inmate's confinement. One administrative policy may not be substituted for another. Each policy clearly spells out any mandates, or exceptions, with respect to issues that must be addressed, or conversely, excluded from consideration, under the policy.

*Id.*

Thompson asserts that Harris was required to exhaust the grievance process under DC-ADM 804.[5] Harris does not dispute that he did not complete the DC-ADM 804 grievance process. Instead, he argues that DC-ADM 801, the process for challenging misconducts—not DC-ADM 804—applies to the issues he has raised and

---

[5] *See* DC-ADM 804 Policy Statement, available online at:
https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015) (last visited December 21, 2025).

that he properly exhausted his challenge to his misconduct under DC-ADM 801.[6] The Court agrees with Harris.

Whatever theory of liability Harris attaches to his claim, it is fundamentally a challenge to the disciplinary action taken against him, including the misconduct issued on January 9, 2025, for possession of contraband. His Fourteenth Amendment claims dispute the evidentiary basis for the disciplinary action and misconduct charge and the procedural adequacy of his opportunity to challenge each. His Eighth Amendment claim focuses on the falsity of the misconduct that resulted in his placement in the restricted housing unit rather than the conditions of his confinement in the restricted housing unit.

DC-ADM 801 applies whenever the dispute hinges on the validity of disciplinary action. *See, e.g., Gibson v. Flemming*, 2019 WL 8017850, at *4 (W.D. Pa. Dec. 2, 2019), *report and recommendation adopted*, 2020 WL 881436 (W.D. Pa. Feb. 24, 2020), *aff'd*, 837 Fed. Appx. 860 (3d Cir. 2020) (holding that an inmate who "alleges that a misconduct is retaliatory...cannot file a grievance, but he can appeal the misconduct and argue that the misconduct was retaliatory"). Because Harris's challenge was fundamentally to the propriety of prison disciplinary actions, he had to pursue that challenge exclusively under DC-ADM 801. Indeed, "the plain language of DC-ADM 804 creates a clear separation from DC-ADM 801 by specifying that '[i]ssues concerning a specific inmate misconduct charge, conduct of hearing,

---

[6] See DC-ADM 001 Policy Statement, available online at:
https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/001%20Inmate%20Abuse.pdf (effective April 11, 2022) (last visited December 22, 2025).

statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, 'Inmate Discipline' and/or DC-ADM 802, 'Administrative Custody Procedures.'" *Cooper v. Garman*, 2024 WL 100246, at *12 (M.D. Pa. Jan. 9, 2024) (cleaned up) (quoting DC-ADM-804). The matters challenged by Harris fell squarely within matters embraced by DC-ADM 801 and expressly excluded from the scope of DC-ADM 804.

As the defendant raising the affirmative defense of failure to exhaust administrative remedies, it is Thompson's burden to produce a record demonstrating her entitlement to judgment on the defense as a matter of law.[7] She has not proffered any evidence to support that Harris failed to exhaust the process under DC-ADM 801, the applicable administrative remedy. Her motion for summary judgment must therefore be denied. Having rejected Thompson's exhaustion defense, the Court will turn to her challenge to the sufficiency of Harris's allegations to state a claim on the merits.

## VI.    Motion to Dismiss: Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.

---

[7] Thompson argues that Harris "failed to allege facts to support the requirement that he first exhausted" available grievance procedures. *See* ECF No. 29, p. 21. However, it is not Harris's burden to plead exhaustion. *See, e.g., Davis v. Wetzel*, 2025 WL 2734159, at *5 (W.D. Pa. Sept. 25, 2025) (quoting *Jones*, 549 U.S. at 216 (holding that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints").

9

1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and view them in a light most favorable to the plaintiff.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint.  *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Harris is proceeding pro se, his complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se pleading to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).

VII.    Motion to Dismiss: Discussion

A. The Amended Complaint fails to allege facts to support Thompson's personal involvement in any alleged violation of Harris's rights.

To state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must allege facts to support that each defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (alterations in original) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2005)). This means that each defendant must have played an affirmative part in the complained-of misconduct. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither

11

participated in nor approved.'") (citations omitted); *Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

The requirement of personal involvement applies with equal force to supervisory defendants. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct). Without specific allegations that a defendant played an affirmative role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013) (dismissing claims against certain defendants because the complaint was "devoid of any facts suggesting that [they] ... had any personal involvement" in the alleged Eighth Amendment violation). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity, including identification of each defendant's actions upon which the claim is based, the factual basis for the defendant's knowledge of the wrongdoing of another if such knowledge is an element of the claim, and, to the extent possible, the time and place of relevant events. *See Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.

Harris's Amended Complaint identifies Thompson as the Superintendent at SCI-Albion but alleges no fact to support that she participated in the cell search, contraband testing, urine testing, or the disciplinary action and proceedings against Harris. The Amended Complaint also alleges no facts to support that she directed any such conduct. "[S]upervisory roles ... are insufficient to infer personal involvement." *Stafford v. Stevens*, 2025 WL 1433671, at *3 (M.D. Pa. May 14, 2025) (citing *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020)). Allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility likewise do not support personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (per curiam) (quoting *Evancho*, 423 F.3d at 354).

Finally, Harris's allegations that Thompson failed to take corrective action after others violated his rights does not support her personal involvement in that violation. *See Enlow v. Beard*, 2013 WL 5332139, at *5 (W.D. Pa. Sept. 23, 2013) ("Plaintiff has not shown personal involvement on the part of the Defendants to whom he allegedly sent inmate request slips informing them of the inappropriate bunk transfer."); *Hill v. Fisher*, 2010 WL 6004059, at *9, (M.D. Pa. Nov. 10, 2010) (dismissing retaliation claim because "submitting a grievance or request slip about a discrete incident that has already happened does not raise a reasonable inference of personal involvement on the part of the defendant to whom the grievance or request slip is submitted."). And incidental, after-the-fact conversations about another person's violation of rights does not constitute personal involvement in that violation.

*See, e.g., Palmer v. Watterson*, 2021 WL 640637, at *5 (W.D. Pa. Jan. 29, 2021) (mere allegation that plaintiff spoke to defendants on various occasions does not show personal involvement in alleged misconduct), *report and recommendation adopted*, 2021 WL 633430 (W.D. Pa. Feb. 18, 2021) (citing *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020)).

Because the Amended Complaint does not support Thompson's personal involvement in the actions upon which he bases his claims, it fails to state a claim against her. In addition to this ground for dismissal, as discussed below, the facts alleged in the Amended Complaint fail to support a violation of Harris's Fourteenth Amendment or Eighth Amendment rights.

B. The Amended Complaint fails to state a procedural due process claim.

To state a Fourteenth Amendment procedural due process claim, a plaintiff must allege facts to demonstrate that she was deprived of a liberty or property interest without due process of law. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Under this standard, the Court only reaches the issue of the adequacy of the procedural process provided if the plaintiff first establishes an interest protected by the Due Process Clause of the Fourteenth Amendment. *See Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010) (instructing that a court reviewing a procedural due process claim first determines whether the plaintiff raises an interest protected by the Fourteenth Amendment and, if such an interest exists, then whether the procedures provided to the plaintiff afforded that individual due process of law) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000)).

14

Harris's due process claim fails at the first step of the analysis because the Amended Complaint does not allege facts to support a protected interest. Harris bases his due process claim on the disciplinary actions taken against him, including allegedly "false" misconduct issued on January 29, 2025, and his placement in the prison restricted housing unit. Harris thus asserts a liberty interest in not being confined to the RHU based on a false or unsubstantiated report. But a liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Renchenski*, 622 F.3d at 325. "Because disciplinary detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, [a plaintiff's] transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause." *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002). Harris does not allege any facts to support that his twenty-two-day detention in the RHU imposed an atypical and significant hardship such that the Fourteenth Amendment required due process protections. *See Diaz v. Canino*, 502 Fed. Appx. 214, 217 (3d Cir. 2012) (holding that state inmate's placement in RHU for 360 days of disciplinary confinement did not impose an atypical and significant hardship on inmate to implicate a protected liberty interest, and thus alleged procedural deficiencies at a misconduct hearing did not violate inmate's due process rights, even if inmate was exposed to continuous searches, subjected to regular relocation of his cell, and unable to sleep as a result of lights that remained turned

on in RHU). Because the duration and conditions of Harris's RHU confinement fail to implicate a liberty interest, they cannot support a procedural due process claim.

Finally, even if Harris had established a protected liberty interest, his due process claim would nevertheless fail the second component of the claim. "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 Fed. Appx. 549, 551 (3d Cir. 2005) (per curiam), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 Fed. Appx. 94, 97 (3d Cir. 2012) (per curiam); *see also* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Here, Harris expressly acknowledges that he was afforded an opportunity to be heard and to defend against the allegedly false misconduct report. Indeed, a hearing officer ultimately found him not guilty of the misconduct.

### C. The Amended Complaint fails to state an Eighth Amendment Conditions of Confinement Claim.

To state an Eighth Amendment conditions-of-confinement claim, a plaintiff must allege facts to support two findings: (1) he was subjected to an objectively, sufficiently serious deprivation of life's necessities, and (2) the prison official acted with deliberate indifference by knowing of and disregarding an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). An inmate is not entitled to

relief simply because of exposure to uncomfortable or inconvenient conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002). Placement in disciplinary custody or other restrictive housing alone does not satisfy the objective component of the claim. "[Pr]isoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment." *Myers v. Folerezell*, 2023 WL 8478013, at *4 (M.D. Pa. Dec. 7, 2023) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)). *See also, Podhorn v. Grondolsky*, 350 Fed. Appx. 618, 620 (3d Cir. 2009) (reiterating that "prisoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program"). To meet the objective component, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities" or a "single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (only "extreme deprivations" are sufficient to make out an Eighth Amendment claim). Such needs include "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

As to the subjective component, a prison official's conduct violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm

and disregards that risk by failing to take reasonable measures to abate it.'" *Farmer*, 511 U.S. at 847; *see id.* at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) ("A plaintiff may demonstrate deliberate indifference by showing that the risk of harm was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past' such that the defendants 'must have known' about the risk.") (quoting *Farmer*, 511 U.S. at 842–43).

Harris's Amended Complaint alleges only that he was subjected to "cruel and unusual punishment" because he was unjustly placed in the RHU. He alleges nothing to support that the conditions in the RHU deprived him of the minimal civilized measure of life's necessities or any identifiable human need. He also has failed to allege any facts to support that Thompson acted with deliberate indifference to any such conditions. The Amended Complaint thus fails to state an Eighth Amendment claim.

### D. The Amended Complaint fails to state a Fourteenth Amendment Equal Protection claim.

Harris's Amended Complaint also alleges that the purportedly false positive urinalysis result, together with his placement in an associated monitoring or "tracking" system, resulted in his being treated in the same manner as inmates who tested positive for controlled substances, thereby violating his rights under the Equal Protection Clause of the Fourteenth Amendment. *See* ECF No. 18, p. 4 ¶ 9. These allegations are too conclusory to support an equal protection claim against Thompson.

The Equal Protection Clause mandates that similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As a general rule, governmental action is presumed valid and will be upheld if it is rationally related to a legitimate governmental interest. *Id.* at 440. Heightened scrutiny applies only where the challenged conduct involves a suspect classification or infringes upon a fundamental right. *Id.* Neither is alleged here.

Harris does not allege membership in any suspect class. To the extent he contends his status as a prison inmate is sufficient, he is incorrect. The classification of "prison inmate" is not a protected or suspect class for purposes of equal protection analysis. *See Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001); *see also Whitney v. Wetzel*, 649 Fed. Appx 123, 128 (3d Cir. 2016); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (holding that neither prisoners nor indigents are suspect classes); *Williams v. Pennsylvania Dep't of Corr.*, 2025 WL 3852677, at *8 (W.D. Pa. Oct. 28, 2025), *report and recommendation adopted sub nom. Williams v. Dep't of Corr.*, 2026 WL 27686 (W.D. Pa. Jan. 5, 2026). Thus, it appears Harris is proceeding on a "class of one" equal protection theory. According to that theory, "a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To state a [class of one] equal-protection violation, [a plaintiff] must allege that 'he has been arbitrarily treated differently from similarly

situated inmates' in all relevant respects." *Hammond v. Zaken*, 2024 WL 3593487, at *2 (W.D. Pa. July 31, 2024) (quoting *McKeithan v. Kerestes*, 2014 WL 3734569, at *10 (M.D. Pa. July 28, 2014)). A stand-alone allegation of unequal treatment without factual allegations identifying comparators, discriminatory intent, or disparate treatment—is insufficient to state an equal protection claim. *See Iqbal*, 556 U.S. at 678; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008). The Court of Appeals for the Third Circuit has repeatedly held that "[l]abels and conclusions" or "formulaic recitations of the elements" do not survive a motion to dismiss. *Id.*; *see also Evancho*, 423 F.3d at 353. "When alleging the existence of similarly situated individuals, plaintiff cannot use allegations ... that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief, and bald assertion[s] that other[s] ... were treated in a dissimilar manner will not survive dismissal." *Margetta v. Ferguson*, 2018 WL 1430936, at *3 (M.D. Pa. Mar. 22, 2018).

Harris's allegation that he was "subjected to the same treatment" as those who truly tested positive for prohibited substances does not save his claim because it does not support disparate treatment. Harris acknowledges that he did test positive for synthetic cannabinoids, *see* ECF No. 18, p. 3, ¶4, and he was treated consistent with other inmates who had tested positive for prohibited substances. Although he alleges that the test yielded a "false positive," *id.*, this represents a disputed factual matter, not disparate treatment. Thus, Harris has failed to allege any plausible basis for an equal protection claim.

VIII.  Conclusion

For the reasons discussed herein, the Court will deny Defendant Thompson's motion to the extent it requests summary judgment based on failure to exhaust administrative remedies but will grant her motion to dismiss based on the Amended Complaint's failure to state a claim.  Because further amendment would be futile given the nature of the defects in Harris's claims, this action will be dismissed with prejudice.  *See Jones v. City of Philadelphia Hous. Dep't*, 573 Fed. Appx. 138 (3d Cir. 2014) (affirming district court's dismissal with prejudice for failure to state a claim where any further amendment of plaintiff's claims brought under the Civil Rights Act would be futile); *see also Santos v. Iron Mountain Film & Sound*, 593 Fed. Appx. 117, 119 (3d Cir. 2014) (same).

A separate order will follow.

DATED this 29th day of January, 2026.


BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES
MAGISTRATE JUDGE